UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHELENE S.,[1] ) | |
| ) | |
| Plaintiff, ) | No. 23-cv-1021 |
| ) | |
| v. ) | |
| ) | Magistrate Judge Keri L. Holleb Hotaling |
| MARTIN J. O'MALLEY, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Shelene S. appeals the denial of her application for disability benefits by the Commissioner ("Commissioner") of the Social Security Administration ("SSA"). For the reasons set forth below, Plaintiff's motion for summary judgment (Dkt. 12)[2] is GRANTED; Defendant's motion for summary judgment (Dkt. 16) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

I. **BACKGROUND**

A. **Procedural History**

Plaintiff's September 24, 2019 Title XVI application for supplemental security income was denied on November 11, 2019, and she did not appeal. This lawsuit seeks review of the denial of Plaintiff's September 23, 2019 application for a period of disability and disability insurance benefits ("DIB"), in which she alleged disability beginning on June 1, 2019, stemming from fibromyalgia; depression; carpal tunnel; back, neck, hip and elbow problems; herniated disk; and

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2] The Court construes Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security (Dkt. 12) as a motion for summary judgment.

deep vein thrombosis. (Administrative Record ("R.") 278-80, 296-305.) Following the denials at the initial and reconsideration levels and an Administrative Hearing, an Administrative Law Judge ("ALJ") issued a June 7, 2022 decision finding Plaintiff not disabled. (R. 14-23.) On December 19, 2022, the Appeals Counsel denied Plaintiff's request for review (R. 1-7), rendering the ALJ's decision the final decision of the Commissioner, reviewable by the district court under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981; *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2004).

B. **Social Security Regulations and Standard of Review**

Pursuant to the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1). To determine whether a claimant is disabled, an ALJ must apply a sequential five-step test. *See* 20 C.F.R. § 416.920(a)(4).

Judicial review of the ALJ's factual determinations is confined to ensuring those findings are supported by substantial evidence. *Martinez v. Kijakazi*, 71 F.4th 1076, 1079 (7th Cir. 2023) (citation omitted); *see also* 42 U.S.C. § 405(g). The ALJ need not "address every piece of evidence or testimony presented, but must provide a logical bridge between the evidence and the conclusions so that we can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Martinez*, 71 F.4th at 1080 (cleaned up). "Summaries of medical evidence, while definitionally 'partial and selective,' are appropriate." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278-79 (7th Cir. 2022) (quoting *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021)). That said, "an ALJ may not ignore an entire line of evidence contrary to [his] ruling." *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020) (citation omitted)).

C. **The ALJ's Decision**

In his June 7, 2022 decision, the ALJ followed the standard five-step sequential process for

determining disability. (R. 14-23.) At Step 1, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of June 1, 2019 and met the insured status requirements of the Social Security Act through December 31, 2024. (R. 17.) At Step 2, the ALJ found that Plaintiff had severe impairments of: cervical, thoracic, and lumbar spondylosis; fibromyalgia; osteoarthritis; and chronic pain syndrome. (R. 17-20.) As is relevant to this opinion, the ALJ deemed the following impairments non-severe: insomnia/hypersomnia because "there is no record that they significantly limit the claimant" and Plaintiff "generally walked with a normal gait at her appointments"; vascular headaches because Plaintiff was not compliant with medications and the record did not reflect the frequency or severity of those headaches; and major depressive disorder because the ALJ found Plaintiff had only mild limitations in the four paragraph B criteria.[3] (R. 17-18.) At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 19.)

Before Step 4, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") "to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)." (R. 19-21.) At Step 4, the ALJ found Plaintiff could perform her past relevant work as an unlicensed cosmetologist. (R. 22.) The ALJ accordingly concluded the analysis at Step 4, determining that Plaintiff was not disabled. (R. 22.)

## II.   ANALYSIS

Plaintiff asserts the ALJ engaged in improper cherry-picking, citing only examination findings favorable to his conclusion, and also failed to build a logical bridge between his conclusions and the evidence, particularly for the ALJ's conclusions regarding Plaintiff's

---

[3]  The paragraph B criteria, which need not otherwise be addressed in detail, are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.

3

descriptions of her symptoms and Plaintiff's complaints of fatigue. (Dkt. 12 at 6-12, 15-17.) Although the Court is mindful that SSA ALJs "are subject to only the most minimal of articulation requirements," *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024), the ALJ nevertheless must "articulate at some minimal level his analysis of the evidence." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) (cleaned up). The ALJ may not "mention[] only evidence favoring the denial of benefits." *Id*. at 888-89; *see also Reinaas*, 953 F.3d at 467 (criticizing decision where ALJ "cited only evidence favorable to her decision without discussing any contrary evidence"). In this case, the Court agrees with Plaintiff that the ALJ focused almost entirely on evidence supporting his decision and did not meet his minimal articulation burden to connect the evidence and his conclusions, preventing meaningful review.

As Plaintiff notes, the ALJ rejected Plaintiff's description of her symptoms based on the following types of medical examination notes—Plaintiff generally exhibited normal gait (citing two pages of the almost 900 pages of treatment records), in several examinations demonstrated full range of motion (citing two record pages and one exhibit generally), stooped without difficulty and sat on the examination table during a consultative examination (citing one exhibit), had normal strength in lower extremities at "several appointments" (citing three record pages), had "multiple" negative straight leg raise tests (citing one exhibit generally and two record pages), and showed normal strength and range of motion in upper extremities in "various examinations" (citing three record pages). (R. 20.) These reasons generally support the ALJ's decision, but Plaintiff points out that the ALJ neither mentioned nor marshaled contrary evidence, which included multiple medical provider notations of tenderness and limited range of motion in the cervical, thoracic, and lumbar spine and hips; slower and not always steady gait; and prescriptions for opiate pain medications. (Dkt. 12 at 8-9, 11 (citing record pages); R. 623, 626, 628-29); *Reinaas*, 953 F.3d at 466 (emphasizing that it is improper for ALJ to "ignore[] entire swaths of" evidence). The ALJ's

4

mention of "imaging evidence" of "cervical spondylosis with spinal canal stenosis, and disc degeneration with disc space narrowing in [her] thoracic spine" and "disc desiccation and retrolisthesis, but minimal disc bulges" (R. 20) without reference to related symptoms, prescriptions, or other treatments does not aid the Court in tracing the ALJ's conclusions regarding what he credited of Plaintiff's described symptoms. *See Sharon B. v. Kijakazi*, No. 20-cv-6910, 2023 WL 5096747, at *5 (N.D. Ill. Aug. 8, 2023) (remanding case because, "[a]lthough the ALJ is not required to accept Claimant's testimony about her pain or any other complaints without question, the ALJ must minimally explain why she did not fully credit Claimant's testimony and how she accommodated the limitations she did credit"); *Charles B. v. Saul*, No. 19-cv-1980, 2020 WL 6134986, at *6 (N.D. Ill. Oct. 19, 2020) ("When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, [her] level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations.") (citing 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304, at *5, *7-8 (Oct. 25, 2017)).

Moreover, many of the ALJ's other provided reasons for his conclusions were equally brief and unclear. For example, the ALJ deemed Plaintiff's role in resolving her mother's estate in Ireland an "activit[y] of daily life" that was "consistent with" a light RFC but provided no explanation why that was, again failing to provide the requisite "logical bridge" linking Plaintiff's activity with his conclusion. *See Sharon B.*, 2023 WL 5096747, at *5 ("Without more of an explanation, the Court is not clear how being an executor of her father's estate negated Claimant's fatigue and pain or was sufficient evidence that Claimant would be capable of full time work.").[4] Similarly, the Court could not follow the ALJ's dismissal of the severity of Plaintiff's headaches;

---

[4] The ALJ also at least twice inconsequentially emphasized that, at the time of the Administrative Hearing, Plaintiff "was residing with three other minor children" (R. 20, 21) without further explanation. Plaintiff points out that the children were her sister's (R. 41-42), and nothing in the record suggests she was providing care for the children.

the record, after all, contained references to the timing and nature of her headaches (*see, e.g.*, Dkt. 12 at 18-19 (providing record citations); R. 517-18, 521, 648-49, 653-54, 659-61, 662-63, 774, 778, 781, 885, 923, 928, 939, 943, 947, 948, 1011, 1014, 1060, 1128, 1063, 1072, 1074-75, 1120, 1135), which contrast with the ALJ's conclusory statement, tied to a single page of the record, that "the record does not reflect the frequency or severity for a severe impairment." (R. 17.) The Court is uncertain how the ALJ reached that conclusion. *See Reinaas*, 953 F.3d at 467 (remanding case partially because "ALJ only briefly acknowledged" spinal issues and "scarcely addressed" headache diagnoses). The ALJ's sparseness prevents a meaningful review of these topics as well.

It may be, as the Commissioner posits, that the ALJ relied on notes that appear within pages of the medical records he cited, which could support conclusions that Plaintiff's treatments for some conditions were effective and without side effects or that some conditions were mild. (Dkt. 17 at 3.) But the ALJ did not reference those notes within the records or purport to draw those conclusions, and this Court must confine its review to the grounds on which the ALJ based his findings. *See, e.g., Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020); *Meuser v. Convin*, 838 F.3d 905, 911 (7th Cir. 2016).

As for the specific symptom of fatigue, as Plaintiff points out, she frequently complained of tiredness, sleepiness, and fatigue, with occasional mentions of intermittent brain fog, at medical and counseling appointments. (Dkt. 12 at 16 (citing more than a dozen references within medical records); R. 520-22.) The medical records, in fact, document that, after Plaintiff complained of excessive daytime sleepiness and fatigue, she underwent a diagnostic sleep study in November of 2019, during which her sleep efficiency was poor and her sleep time totaled just fifty-one minutes. (R. 653-54.) The resulting diagnoses were probable sleep onset insomnia and sleep maintenance

6

insomnia.[5] (R. 653-54.) Plaintiff complained of excessive sleepiness throughout 2020 (*see, e.g.*, R. 579, 878-79, 913, 939-49, 1062, 1073, 1083, 1109), and one counselor mentioned Plaintiff's slow thought processes, attributing them to Plaintiff's pain and exhaustion. (R. 839.) The ALJ, though, mentioned none of this and never addressed her fatigue. (R. 17.) This was error. Where a claimant has "documented issues with fatigue," an ALJ must "fulsomely 'discuss . . . how it might affect her job performance.'" *Rebecca A. v. Kijakazi*, No. 21-cv-3185, 2022 WL 16856394, at *3 (N.D. Ill. Nov. 10, 2022) (collecting cases). *See, e.g.*, *Thompson v. Berryhill*, No. 2:18-cv-63-JEM, 2019 WL 632189, at *3 (N.D. Ind. Feb. 14, 2019) ("Because the ALJ offers no explanation of how the RFC accommodates Plaintiff's fatigue, the RFC is not supported by substantial evidence."); *Collins v. Berryhill*, No. 17-cv-3589, 2018 WL 3361847, at *3 (N.D. Ill. July 10, 2018) (similar); *but see Matthews v. Saul*, 833 F. App'x. 432, 436-38 (7th Cir. 2020) (concluding ALJ reasonably justified decision of how to accommodate claimant's fatigue). To be clear, the Court does not fault the ALJ for any particular conclusion he reached; the problem is that the Court cannot follow his reasoning. *Reinaas*, 953 F.3d at 467.

The Commissioner defends the ALJ's decision because the state agency medical consultant at the reconsideration level considered Plaintiff's fatigue and found her capable of medium work. (Dkt. 17 at 6.) But the ALJ did not mention fatigue in discussing the consultant's opinion, much less anywhere else, and, on this record, the Court finds no logical bridge between the evidence and the ALJ's stated conclusions. *See Sharon B.*, 2023 WL 5096747, at *5 ("The Court cannot, and will not, make any assumptions about how the ALJ evaluated and weighed the evidence and

---

[5] The ALJ discounted Plaintiff's "insomnia/hypersomnia" in a single sentence due to a purported lack of evidence of significant limitation and Plaintiff's "normal gait at her appointments." (R. 17.) The Court cannot fathom how Plaintiff's "normal gait" at appointments has any relevance to Plaintiff's complaints of insomnia or hypersomnia, and the ALJ provided no reasoning (except a conclusory statement regarding lack of evidence in the record) for why he found Plaintiff's sleep conditions were not severely limiting. Even accepting the conclusion that those conditions were non-severe, though, does not justify a failure to address related symptoms, such as fatigue, in crafting the RFC.

7

Claimant's testimony.") (citations omitted); *Rebecca A.*, 2022 WL 16856394, at *3 ("reject[ing]" Commissioner's argument that "ALJ did not err with respect to [claimant's] fatigue because the ALJ evaluated the opinions of other doctors who themselves considered [claimant's] fatigue").

The Court also cannot say that any errors regarding Plaintiff's symptoms (including identifying what symptoms remain to be accommodated) were necessarily harmless because the vocational expert testified "being off task" at work for more than "10% [of the day] would be work-preclusive." (R. 66.) Without the missing link regarding Plaintiff's symptoms, such as fatigue, and how the RFC addresses it, there is no way to determine whether Plaintiff's fatigue might implicate that testimony. *See Hildebrand v. Saul*, No. 2:17-cv-108-JPK, 2021 WL 1085605, at *6 (N.D. Ind. Mar. 22, 2021).

The Court expresses no opinion on Plaintiff's remaining arguments, or the decision to be made on remand except to reiterate that the ALJ must build a logical bridge between the evidence in the record and his ultimate conclusions, whatever those conclusions may be, on all relevant issues. *See, e.g., Reinaas*, 953 F.3d at 466-67; *Sharon B.*, 2023 WL 5096747, at *5.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. 12) is granted, and the Commissioner's motion (Dkt. 16) is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

ENTERED: August 21, 2024

                                                  Hon. Keri L. Holleb Hotaling
                                                  United States Magistrate Judge